```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF KENTUCKY
                SOUTHERN DIVISION at LONDON
```

DAVID DEATON            )
                        )
    Plaintiff,          )
                        ) Civil Action No. 07-134-JMH
                        )
v.                      )
                        )
MICHAEL J. ASTRUE, COMMISSIONER ) **MEMORANDUM OPINION AND ORDER**
OF SOCIAL SECURITY,     )
                        )
    Defendant.          )
                        )
                        )

                    **   **   **   **   **

This matter is before the Court on cross motions for summary judgment [Record Nos. 10 and 11][1] on Plaintiff's appeal of the Commissioner's denial of his application for supplemental security income. The Court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On July 20, 2005, the claimant filed an application for supplemental security income. On September 22, 2006, Administrative Law Judge, "ALJ," Frank Letchworth held a hearing on Plaintiff's application. (Transcript of Record, "TR," 11). Plaintiff was forty-nine years old at the time of the hearing

---

[1] These are not traditional Rule 56 cross motions for summary judgment. Rather, they are procedural devices used by the Court to obtain the views of the parties regarding the sufficiency of the evidence contained in the administrative record developed before the Commissioner.

decision, has a seventh grade education, and is illiterate (TR 12, 43, 62, 416). Plaintiff successfully worked for at least eight years as a custodian/janitor at Corbin Middle School, but lost his job when the school system changed its policies and required a high school education, or the equivalent, for every employee. (TR 56, 204-5, 420). After losing his job with the school system, Plaintiff did not seek additional employment (TR 421). Plaintiff initially alleged disability due to severe arthritis, stomach problems, diabetes, thyroid disorder, and blood pressure problems (TR 56, 426). At his hearing, Plaintiff also alleged disability due to borderline intelligence (TR 411-412).

After his physical examination of the Plaintiff in October of 2005, Dr. Mengesha reported that he had observed no physical evidence of significant restrictions in Plaintiff's ability to stoop, bend, reach, sit, stand, move about, lift, carry, handle objects, or travel. (TR 214). Dr. Crystal Sahner, a licensed clinical psychologist, examined Plaintiff in August of 2005 (TR 204-210). According to Dr. Sahner, Plaintiff was unable to spell "cat;" unable to count backwards from ten; and unable to add three plus four, among other remarkable deficits in his knowledge (TR 207-8). Dr. Sahner estimated Plaintiff had borderline intellectual functioning and rated his Global Assessment of Functioning ("GAF") between 50 and 53 (TR 209). Despite the low GAF score, Dr. Sahner stated Plaintiff retained the ability to understand, remember and

2

carry out simply repetitive tasks (AR 208). Plaintiff's ability to interact with others was moderately limited, as was his ability to tolerate the stress and pressure of day-to-day workplace employment (TR 209). Plaintiff retained the ability to sustain attention and concentration towards the performance of simple, repetitive tasks (TR 209).

On November 2, 2006, the ALJ made the following findings in determining that Plaintiff was not entitled to disability benefits:

> 1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 2. The claimant's combination of impairments are considered "severe" based on the requirements in the Regulations.
>
> 3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 4. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 5. The claimant has residual functional capacity to perform a range of medium exertion in an object-focused environment that involves no more than occasional and superficial interaction with co-workers and supervisors; but no contact with the general public. The claimant is able to understand and recall simple procedures and instructions and can adapt to changes in the workplace when gradually introduced. The claimant is limited to work that accommodates complete illiteracy.
>
> 6. The claimant's past relevant work as a custodian did not require the performance of work-related activities precluded by his residual functional capacity.
>
> 7. The claimant's medically determinable combination of impairments does not prevent the claimant from performing his past relevant work.

      8. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision.

TR at 17.

## II. OVERVIEW OF THE ALJ HEARING

In determining whether a claimant is disabled or not, the ALJ conducts the following five-step analysis:

      1.) Is the individual engaging in substantial gainful activity? If the individual is engaging in substantial gainful activity, the individual is not disabled, regardless of the claimant's medical condition.

      2.) Does the individual have a severe impairment? If not, the individual is not disabled. If so, proceed to step 3.

      3.) Does the individual's impairment(s) meet or equal the severity of an impairment listed in appendix 1, subpart P of part 404 of the Social Security Regulations? If so, the individual is disabled. If not, proceed to step 4.

      4.) Does the individual's impairment(s) prevent him or her from doing his or her past relevant work, considering his or her residual functioning capacity? If not, the individual is not disabled. If so, proceed to step 5.

      5.) Does the individual's impairment(s) prevent him or her from performing other work that exists in the national economy, considering his or her residual functioning capacity together with the "vocational factors" of age, education, and work experience? If so, the individual is disabled. If not, the individual is not disabled.

*Heston v. Comm'r of Social Security,* 245 F.3d 528, 530 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. If the analysis reaches the fifth step without a finding that the

4

claimant is not disabled, the burden transfers to the Secretary." *Preslar v. Sec'y of Health and Human Services,* 14 F.3d 1107, 1110 (6th Cir 1994).

### III. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, *see* 42 U.S.C. §405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion, *see Landsaw v. Sec'y of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

### IV. ANALYSIS

Plaintiff argues the case should be remanded due to the following three errors: (1) that the ALJ erred when he failed to adopt Dr. Sahner's finding that Plaintiff had a GAF of 50-53; (2) that the ALJ erred when he did not fully and fairly develop the record regarding Plaintiff's borderline intelligence; and (3) that

5

the ALJ erred in determining that Plaintiff could return to his past work or other work in the national economy.

Plaintiff argues the ALJ erred when he disregarded Dr. Sahner's finding that Plaintiff had a GAF of 50-53. The ALJ's findings, in pertinent part, are as follows:

> Although the claimant's GAF has been assessed as 50 on occasion…the overall record indicates the claimant has no more than moderate limitations in adaptive functioning, social interaction and attention, concentration, persistence and pace. This is consistent with the claimant's range of adaptive functioning established per testimony. It is also consistent with the assessments made of the claimant during his treatment at the Cumberland River Comprehensive Care Center ("Comp Care") and with opinions of consultative examiners. (Exhibits 2F and 3F).

TR at 15.

The Court finds that the ALJ did not err in failing to adopt Dr. Sahner's GAF. The Sixth Circuit recently held that an ALJ can reasonably give less weight to the opinion of a psychiatrist, who is not the claimant's treating physician, when that opinion is inconsistent with other medical opinions and the record as a whole. *Kornecky v. Comm'r of Social Security*, No. 04-2171, 2006 WL 305648 (6th Cir. Feb. 9, 2006). Similarly, the ALJ was not required to accept Dr. Sahner's GAF of 50-53, considering that she was not a treating physician and that Plaintiff's treating doctors indicated a higher GAF. The record indicates that during his treatment at Comprehensive Care, Plaintiff initially received a GAF rating of 50 in July 2000, but after receiving medication and counseling, his

GAF was subsequently rated at 60 in October 2001, 61 in November 2002 and 60 in January 2004 (TR 156, 166, 172). Also, Plaintiff, through testimony, stated that his level of functioning was such that he was able to perform as a janitor/custodian in the past, which indicates that he is not mentally precluded from performing those types of unskilled jobs in the economy (TR 56, 204-5, 420). *See Ellison v. Barnhart*, 355 F.3d 1272, 1275-1276 (11th Cir. 2003) (fact that claimant continued to work for long period despite his alleged disabilities was additional evidence that he was not disabled). There was substantial evidence to support the ALJ's decision not to adopt Dr. Sahner's GAF.

Next, Plaintiff argues that the ALJ erred when he did not fully and fairly develop the record regarding Plaintiff's intelligence. The Court finds that the ALJ acted reasonably by not seeking additional testing to determine whether Plaintiff was mentally retarded. The record indicates that consulting physicians Dr. Ross and Dr. Perritt concurred that Plaintiff was not mentally retarded and did not require further intelligence testing (TR 219, 222, 252-53). Additionally, there is no evidence in the record that Plaintiff, or his attorney, requested additional testing from the ALJ at the hearing (TR at 408-458). The ALJ is not required to act as claimant's counsel or to collect evidence for the claimant. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1172 (6th Cir. 1990) (although ALJ has duty to develop a full and fair

7

record, he is not required to act as the claimant's counsel or to produce evidence for the claimant).

Finally, Plaintiff contends that the ALJ erred by finding that Plaintiff could return to his past work or other work in the national economy. The Court finds that as there was substantial evidence to support the ALJ's decision, the ALJ did not err by failing to discuss the inconsistency between the vocational expert's testimony and the requirements found in the Dictionary of Occupational Titles ("DOT"). *See* Department of Labor, *Dictionary of Occupational Titles* (4th ed. 1991) at Appendix C. According to the DOT, a person must be somewhat literate in order to work. The vocational expert testified that while Plaintiff is illiterate, there are jobs that he can perform. The ALJ's findings, in pertinent part, are as follows:

> The impartial vocational expert testified that based upon the claimant's residual functional capacity, the claimant could return to his past relevant work as custodian as previously performed and as generally performed in the national economy. Ms. Colvin-Robinson opined that based on her experience as well as the information included in the Dictionary of Occupational Titles, an individual who was illiterate or who did not speak English could perform custodial work. I accept her testimony and find the claimant is capable of returning to his past relevant work.
>
> FN 3: In the alternative, assuming the claimant could not perform his past relevant work; Ms. Colvin-Robinson testified that, given the claimant's age, education, work experience and residual functional capacity, there was other work in the national and local economies he could perform… I also accept this testimony and find it *consistent* with the Dictionary of Occupational Titles. (SSR 00-4p)

8

TR at 16-17 [emphasis added].

Social Security Ruling 00-4p requires that, "[w]hen vocational evidence provided by a VE [vocational expert] or VS [vocational specialist] is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled." The lowest level of language development the DOT recognizes is a ranking of 1, which constitutes the following: "Reading:  Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute." Department of Labor, *Dictionary of Occupational Titles* (4th ed. 1991) at Appendix C.  An illiterate person such as Plaintiff would fall outside of the range of the DOT; therefore, the vocational expert's testimony that Plaintiff could nonetheless perform in certain occupations would be inconsistent with the DOT.

The inconsistency between the vocational expert's testimony and the DOT is of no consequence.  Even without the vocational expert's testimony, there was substantial evidence to support the ALJ's decision that Plaintiff could return to his past or similar work.  Plaintiff himself testified that despite his illiteracy, he performed work as a janitor for several years.  Dr. Mengesha testified that he observed no physical evidence of significant restrictions in Plaintiff's ability to sit, stand, move about, lift, carry, stoop, bend or reach.  Additionally, the vocational

expert herself testified that Plaintiff could understand, remember, and carry out instructions for simple, repetitive tasks.

### V. CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED**:

(1) That Plaintiff's motion for summary judgment [Record No. 10] be, and the same hereby is, **DENIED**; and

(2) That the Commissioner's motion for summary judgment [Record No. 11] be, and the same hereby is, **GRANTED**.

This the 16th day of October, 2007.



Signed By:
*Joseph M. Hood*
United States Senior Judge